UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

THOMAS B.[1],                )
                             )
    Plaintiff,               )
                             )
    v.                       )   CIVIL NO. 1:18cv263
                             )
NANCY A. BERRYHILL, Acting   )
Commissioner of Social Security, )
                             )
    Defendant.               )

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] Plaintiff's full name will not be used in this order to protect privacy.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act

through March 31, 2018.

2. The claimant engaged in substantial gainful activity during the following periods: January 2013 through December 2013 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: degenerative disc disease and status-post cervical spine fusion (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can stand and walk for 4 hours combined in an 8-hour day. The claimant can perform no overhead reaching or climbing of ladders, ropes, or scaffolds, frequently handle, feel, and finger, and occasionally climb ramps and stairs. He cannot operate a motor vehicle as a condition of employment, work outside, or in extreme heat, and would be able to work in typical office environment kept around room temperature.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on April 1, 1965 and was 47 years old, which is defined as a younger individual age 19-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, subpart P, Appendix 2).

11. Considering the claimant's age, educations, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18- 22).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on March 11, 2019. On April 17, 2019, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on May 17, 2019. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff's date last insured is March 31, 2018. Born in 1965, he was 47 years old at his alleged onset date, and turned 50 more than a year before the hearing date, putting him in the age category of closely approaching advanced age. Plaintiff completed the twelfth grade. He has mostly performed manual labor since high school. The ALJ found Plaintiff had past work as a quality inspector, rubber goods inspector, machine operator, loader and unloader, and foundry worker. Plaintiff states that his impairments include degenerative disc disease, status post cervical spine fusion with related shoulder issues, sinus problems, headaches and carpal tunnel syndrome.

In support of remand, Plaintiff first argues that the ALJ did not appropriately consider the opinion of consultative examiner Venkata Kancherla, M.D. Dr. Kancherla conducted a consultative physical examination on June 2, 2015, during which he observed that Plaintiff "walks keeping his head stiff" (Tr. 311 - 314). Upon examination, in relevant part, Dr. Kancherla found reduced range of motion in the cervical and lumbar spine and in the right shoulder (Tr. 311). Plaintiff's neck was supple, despite the reduced range of motion (Tr. 313). During the examination, Plaintiff demonstrated that he could get onto the examination table, recline flat, and sit up (Tr. 313). Plaintiff had full muscle strength and normal gait and station (Tr. 313). He was able to walk on heels and toes; do a partial squat; get up from chair; take off and put on socks lifting legs and slipping into shoes (Tr. 313). Dr. Kancherla did not identify any functional limitations (Tr. 311 - 314).

Plaintiff alleges that the ALJ discounted Dr. Kancherla's findings. However, a review of the ALJ's decision shows that the ALJ discussed several later examinations through March 2016

5

that also showed limited cervical range of motion (and other objective findings) (Tr. 20). The ALJ then concluded that the reduced range of cervical motion (and other findings) warranted a reduction to light work (Tr. 20). Thus, the ALJ's decision demonstrates that he took into account Dr. Kancherla's findings when formulating the RFC.

Plaintiff purports to interpret the significance of the reduced range of motion findings and asserts that Dr. Kancherla's "chief highlighted impression amounts to an opinion that Bryant is disabled" (Plaintiff's Brief at 6 - 8). Notably, however, Dr. Kancherla did not even identify any functional limitations resulting from his findings—much less indicate in any way that he thought Plaintiff was disabled within the meaning of the Social Security Act (Tr. 311 - 314). Moreover, State agency medical consultants B. Whitley, M.D., and J.V. Corcoran, M.D., both reviewed Dr. Kancherla's findings, and they did not identify any functional limitations related to Plaintiff's neck impairment over and above those the ALJ found (Tr. 93 - 97, 98 - 115). Plaintiff's own interpretation of the reduced range of cervical motion findings cannot override the professional medical opinions of Drs. Kancherla, Whitley, and Corcoran.

Plaintiff's argument also ignores later evidence showing no neck stiffness and normal ranges of motion (Tr. 510, 511, 596). In fact, during several visits to his doctor in 2016 and at an annual physical examination in 2017, Plaintiff did not complain of neck pain at all (Tr. 573-74, 576, 579, 581, 583, 589, 596). Thus, the ALJ's decision reveals that he considered the most significant findings related to Plaintiff's neck impairment and he accommodated those findings in the RFC (despite the fact that Dr. Kancherla did not identify any functional limitations during examination).

Next, Plaintiff argues that the ALJ erred by overemphasizing daily activities. The ALJ in

this case appropriately considered the evidence of record related to Plaintiff's daily activities as one of the regulatory factors set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c). In so doing, the ALJ appropriately considered the evidence of record showing that Plaintiff himself had reported to two doctors that he did not need help performing personal hygiene, and that he later stated he could cook, drive, live independently, and ride public transportation (Tr. 20, 312, 589).

Plaintiff points to his ALJ hearing testimony that his mother "helps him with cooking, laundry, and other ADLs" (Plaintiff's Brief at 11, citing Tr. 59). However, this testimony does not establish ALJ error, especially in light of Plaintiff's other statements that he could function independently—even without taking any medications (Tr. 312, 589). And, although Plaintiff testified that his mother and father take care of him, Plaintiff did not specifically testify that his mother does household chores only because Plaintiff is physically unable to do them (Tr. 59). Similarly, Plaintiff argues that he has long relied on his father to drive for him (Plaintiff's Brief at 11, citing Tr. 69). This point does not establish ALJ error, either. Plaintiff told Dr. Kancherla that he lost his driver's license because of driving while under the influence (Tr. 312). Thus, the record demonstrates that Plaintiff was legally—not physically—unable to drive. And, although Plaintiff again refers to continued findings of a "stiff neck," and to the C-Spine MRI, as explained above, the ALJ acknowledged those findings and reduced the RFC accordingly.

Moreover, just a month after the ALJ hearing in this case, Plaintiff had a normal physical examination, at which time he told his doctor that he was not taking any pain medications (Tr. 596 - 597). This evidence is inconsistent with Plaintiff's current argument that the ALJ overemphasized Plaintiff's statements about his daily activities (Plaintiff's Brief at 11 - 12).

Lastly, Plaintiff argues that the ALJ erred by not accounting for all impairments in

7

combination in the RFC. Plaintiff contends that the RFC should contain limitations related to cervical extension, flexion, lateral flexion, and rotating. In formulating the RFC, the ALJ will look at all of the relevant medical and other evidence of record. 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(3). Contrary to Plaintiff's argument, the ALJ's decision reveals that he fully complied with this regulation when formulating Plaintiff's RFC (Tr. 15 - 23). As explained above, the ALJ reduced Plaintiff's RFC to the light level in part, because of the limitations in cervical range of motion (Tr. 20). As also noted above, no physician opined that Plaintiff's limitations in cervical range of motion imposed any limitations greater than those the ALJ found—and Plaintiff does not identify any such physician identified limitations. The burden is on Plaintiff at this stage to identify such limitations and he has not done so.

Plaintiff points to certain evidence of record that he contends undermines the ALJ's RFC, and tries to analogize it to an out-of-jurisdiction, non-precedential case. Plaintiff's analogy fails. His first two references to the record in this case (to Tr. 566 and 594) pertain to evidence generated in 2011 and 2013, while Plaintiff was still working (Plaintiff's Brief at 14, Tr. 18, citing Exhibits B4D, B6D, and B7D). The ALJ appropriately found that Plaintiff performed substantial gainful activity from January through December 2013, and thus, the 2011 and 2013 evidence only further supports the ALJ's decision (Tr. 18; 20 C.F.R. §§ 404.1520(b) and 416.920(b)).

Plaintiff next cites Tr. 526, noting that he fell again—but he neglects to note that this record indicates that Plaintiff was intoxicated at the time. It does not establish that Plaintiff fell because of his allegedly disabling impairments. Plaintiff then refers to the September 2014 motor vehicle accident findings, citing Tr. 439, but the ALJ considered these findings when formulating

the RFC (Plaintiff's Brief at 14, Tr. 20). Plaintiff further cites to Tr. 523 with a date of April 2015 and links it to "neck spurs with pinched nerve in the arm" in the non-precedential case he cited. However, the record in this case does not contain evidence of neck spurs at Tr. 523—nor is there such evidence elsewhere in the record. Moreover, the progress note on this page is dated September 24, 2014, not April 2015 (Tr. 523).

Finally, Plaintiff references headaches on two occasions during the period at issue, in July and October 2016 (Plaintiff's Brief at 14, Tr. 510-513, 571-573). The ALJ acknowledged Plaintiff's complaints of headaches and considered this evidence (Tr. 18). However, the ALJ appropriately determined that headaches were not a severe impairment because they were given cursory mention in the record and because Plaintiff did not testify to any limitations from them (Tr. 18). The other references to headaches in 2005 and 2008 do not reflect Plaintiff's functioning during the period at issue. In light of the above, this court finds that Plaintiff has failed to demonstrate any error on the ALJ's part. Accordingly, the ALJ's decision will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.


Entered: July 22, 2019.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court